1      UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF TEXAS
2              HOUSTON DIVISION

3

4   UNITED STATES OF AMERICA      *   CRIMINAL NO. H-09-259-1
                                  *
5   VERSUS                        *   Houston, Texas
                                  *   September 24, 2010
6   DONALD SCHROEDER              *   10:38 a.m.

7

8                      SENTENCING
        BEFORE THE HONORABLE EWING WERLEIN, JR.
9           UNITED STATES DISTRICT JUDGE

10

11  For the United States:

12          Mr. James D. McAlister
            Assistant U.S. Attorney
13          P.O. Box 61129
            Houston, Texas 77208
14

15  For the Defendant:

16          Mr. Ronald G. Woods
            Attorney at Law
17          5300 Memorial Drive
            Suite 1000
18          Houston, Texas 77007

19

20  Court Reporter:

21          Fred Warner
            Official Court Reporter
22          515 Rusk Avenue
            Houston, Texas 77002
23

24  Proceedings recorded by mechanical stenography, produced by
    computer-aided transcription.
25

1          THE COURT:  Court calls for sentencing No. 09-259,

2    United States versus Donald Schroeder.

3                    For the United States.

4          MR. McALISTER:  Jim McAlister for the United States,

5    Your Honor.

6          THE COURT:  For the defendant.

7          MR. WOODS:  Good morning, Your Honor.  Ron Woods for

8    Don Schroeder.

9          THE COURT:  Good morning, sir.

10          The defendant in this case was convicted, was

11    he not, of Count 1 of the superseding information?

12          MR. McALISTER:  That is correct, Your Honor.

13          THE COURT:  Based upon a plea of guilty?

14          MR. WOODS:  Yes, Your Honor.  May 29th last year of

15    '09.

16          THE COURT:  And have you received and read and had

17    opportunity for your client to read, discuss with you the

18    presentence investigation report from the probation office?

19          MR. WOODS:  Yes, Your Honor, and the addendum.

20          THE COURT:  Very well.

21          I have received in connection with this the

22    presentence investigation report from the probation office,

23    the government's objections at Document No. 127, the next

24    statement from the government at Document 140 that it had no

25    objections after the probation office agreed to the

defendant's, or rather, to the government's objection, which
was in accord with what the defendant would object to as
well.

The government's 5 -- and that was at 140.
Then the government's 5K1.1 motion, Document No. 141.

The defendant's sentencing memorandum at
Document No. 144 that I infer has no objections to the PSR,
and numerous well-written letters from a large number of
former business colleagues, friends and others that have
spoken of the good qualities they have observed in Mr.
Schroeder.

Are these all of the matters that have been
filed in connection with this sentencing?

MR. WOODS:  Yes, Your Honor.

MR. McALISTER:  By the government, Your Honor, yes.

THE COURT:  Let me say, counsel, with respect to
this presentence investigation report, I have given
considerable study to this question that the government
objected to at Document No. 127, namely, the adjustment of
two levels under Section 2B1.14.

I'm not -- although the probation office
evidently was persuaded, after reading the authorities and
cases on this, I am not persuaded that that is not a correct
adjustment that should have been made in this case; that is,
the adjustment that if the offense involves receiving stolen

property, the defendant or the person in the business of
receiving and selling property increased by two levels. A
number of cases the 5th Circuit has decided on this. I will
hear you if you wish to speak further on this.

MR. McALISTER: I would like you to, Your Honor.

Your Honor, this is a complicated case. It's a
little bit unusual in the case because the product that's
actually being moved around is not like dope or guns where
it's detrimental to an individual. This product is actually
readily sold in the U.S. and Mexico, though the
across-the-border transaction at this particular time in
history were prohibited. In that vein, we have numerous
companies in the U.S. that were dealing in legitimate
petroleum sales, such as Mr. Schroeder's company Trammo, for
years.

THE COURT: I recognize that. That is not an issue.

MR. McALISTER: Well, but in the overall conspiracy,
there were many companies that were really in the business of
doing nothing else but buying and selling condensate. So in
our conspiracy itself, there is a vast difference between the
entities. And it wouldn't really be fair to sentence one
company that's in legitimate business in the same enhancement
as with the companies that really dealt in nothing else but
this. And I know the case law differs on it, but from
the government's --

1        THE COURT:  The 5th Circuit is pretty consistent on

2    it, I think.

3        MR. McALISTER:  From the government's perspective,

4    there was a difference in this case.  Really the enhancement

5    in my opinion went more towards a fence.  Did you set this

6    company up to do the selling of this product in the U.S.?

7    Trammo was not in that vein.  Some of the companies at the

8    border certainly were.  That's really what they were doing.

9            Certainly Continental Fuels in this instance

10   was set up in the past to do legitimate trades; but at this

11   point in history, that's really all they were doing was

12   dealing with the condensate.  And that's why I thought they

13   deserved the enhancement, yet Trammo did not.  That was the

14   distinction I drew and the reason that I objected to that in

15   this particular case, because I don't think it would be

16   equitable to treat all the companies the same because they

17   weren't similarly situated.

18       MR. WOODS:  Your Honor.

19       THE COURT:  Yes, sir.

20       MR. WOODS:  May it please the Court.  I submitted a

21   detailed memorandum to the probation office contesting that

22   two-point enhancement.  The sentencing guidelines state that

23   the two-point enhancement applies to those people that are in

24   the business of receiving and selling stolen property.

25           Mr. Schroeder was President of Trammo

Petroleum, which had $248 million worth of legitimate
business, and he made the horrible mistake of buying and
receiving this particular small amount, which was less than
one percent.  It's .8 percent of his business during that
period of time.  He clearly was not in the business of
receiving and selling stolen property.

He made one mistake in his 35 years in the
energy business.  And the fraud provision in the guidelines
adequately covered the offense without enhancing it two
levels because of the receiving and selling.  That's already
covered in the guidelines in 2F.

The two-point enhancement is for those people
who are clearly like fences and those type of individuals
that are in the business of receiving and selling.  Mr.
Schroeder was not in the business of doing that.  He was in a
legitimate business, a very sizable business of $248 million
in the year 2008, so I clearly felt that it didn't apply.

I informally submitted a lengthy memo to the
probation department.  I should have filed it with the Court
if I thought that the Court was going to take this exception
to it, and I am happy to refile it.  I don't have it present
with me, but I am happy to get a copy and give it to the
Court for the Court's consideration if you're thinking of not
allowing this two-point reduction.

THE COURT:  Well, there's $248 million of business;

but the amount that is being delivered in a rather
sophisticated way to put this into commerce in this country
through Trammo was more than $2 million in business.

    MR. WOODS:  Not during that period of time of the
conspiracy, Your Honor.

    THE COURT:  What was it?

    MR. WOODS:  January to April, '09 it was only 2
million and a profit of 148,000.

    THE COURT:  2 million in the volume --

    MR. WOODS:  Yes, Your Honor.

    THE COURT:  -- of the stolen condensate?

    MR. WOODS:  Yes.  That Trammo was involved with.
That Mr. Schroeder was involved with.

    THE COURT:  So there was a 7 percent profit, if I
read it correctly?

    MR. WOODS:  Yes, Your Honor.

    THE COURT:  During this period of time, whereas it
was only less than one percent of the volume of the business?

    MR. WOODS:  Yes, Your Honor.

    THE COURT:  It was a very profitable thing to fence
this --

    MR. WOODS:  For that short period where he made the
mistake, it was a profitable venture.  He did not enter into
it because he wanted that to be his main level of business.
He had a significant level of business, and this was a

horrible mistake that didn't need to be entered into, but was
not done out of greed or out of trying to make this his main
line of business.

      THE COURT:  All right.  Anything else?

      MR. WOODS:  May I submit that memorandum to you?

      THE COURT:  Well, this is the time I am going to
rule.  So I have read everything that's been submitted.

      I've read the cases on this, United States
versus Escubet, 919 Fed 2d, 960; United States versus McKay,
33 Fed 3d, 489, where there was one backhoe was all that was
involved.  And yet the adjustment was upheld.

      United States versus Sutton, 77, Fed 3d, 91,
all 5th Circuit cases.

      The 5th Circuit consistently has viewed this as
something that is an adjustment that is to be made.  Even
though it's only one exception to an otherwise legitimate
business, here we have a few months of exception, millions of
dollars of business, more involved than in any of these 5th
Circuit cases, and a profit margin far in excess of what he
could do on his normal business.  And under these
circumstances, I find that the adjustment does apply and that
it meets all of the requirements of the enhancement.

      And as explained in the Application Note 5,
with respect to certainly the sophistication of this
operation, the value and size of the stolen property that was

being through-put here through this case, which was sizable, even though small in proportion to the overall business, creates a huge incentive to others who were stealing this product in Mexico when they know there is a market and you can get it into commerce in the United States.

And that is the kind of activity, therefore, conducted through Trammo that encourages and facilitates others to commit crimes. And in this instances there is no previous history of that criminal activity; but on balance, I find that these factors certainly require the adjustment to be made. And I am going to make that adjustment and overrule the objections made by both the government and the defendant with respect to that.

Otherwise, I adopt the Presentence Investigation Report, the addendum thereto and find based upon that the Total Offense Level is 17, the Criminal History Category is 1. Let me make sure about that because this may -- there may be a larger -- it would be 18, so he'd get, still gets a three-level credit for adjustment of responsibility.

That would bring this to an Offense Level 15, Criminal History Category 1; and that would give a recommended custody range of 18 to 24 months, a fine range of 4,000 to $40,000. And there is a Section 5K1.1 motion from the government for downward departure pending.

1    Very well.  Mr. Woods, do you wish to make a

2  statement?

3        MR. WOODS:  Yes, Your Honor.

4        THE COURT:  You may.

5        MR. WOODS:  We're asking the Court to seriously

6  consider and grant the government's motion of a downward

7  departure of five levels.  Mr. Schroeder made a horrible

8  mistake after 35 years in the legitimate energy business.  He

9  is very well respected in the business.

10        The minute he was confronted with the

11  investigation, he made the decision to plead guilty, to

12  cooperate fully with the government.  He was fully debriefed

13  by the U.S. Attorney's office, by the agents from Immigration

14  and Customs Enforcement.  His immediate plea and cooperation

15  led to the government being able obtain pleas from the other

16  individuals.

17        Mr. Schroeder has tried to rectify and atone

18  for his mistake.  He has cooperated fully with Trammo, and

19  you received a letter from Trammo recommending leniency based

20  on his cooperation.  He has cooperated fully with Pemex, the

21  alleged victim in this case; and they have recommended

22  leniency for this Court to consider.

23        Mr. Schroeder is so respected in the energy

24  industry that all his clients followed him from Trammo --

25  excuse me -- from Enron over to Trammo and have been with

him; and even though they realized and have read in the
newspaper about this mistake, they have written this Court
numerous letters and well thought-out and thoughtful letters
recommending leniency for this Court.

I have been doing this for 46 years, and this
is the most remorseful defendant I have ever seen, Your
Honor.  He realized he made a mistake.  He wants to try and
atone for it.

I don't think that a term of imprisonment is
deserved in this case.  He has led an exemplary life.  And
we're asking the Court to please, please consider probation.

THE COURT:  Very well.  Thank you, sir.

Mr. Schroeder, do you wish to make a statement
on your own behalf, sir?

THE DEFENDANT:  Yes, sir.

I mean, since I pleaded guilty a
year-and-a-half ago, there hasn't been a day that I haven't
been remorseful through this whole ordeal.  You know, I was
brought up one of six kids, the oldest one, you know; always
had to set an example for my brothers and sisters.

I come from a pretty strict Catholic family;
and, you know, I try to do that and lead them graduating
through high school, working through college, graduating from
college.  And I just tried to set an example for them through
this.

1    I've always tried to be above-board, which I
2  think I have been, Your Honor.  And, you know, I just, I'm
3  asking for forgiveness and a second chance to get back out in
4  society.
5    I know I've disappointed my family, my kids,
6  grand kids.  And I'd just like to get back out in society,
7  and whatever time I do have left on this Earth try to make
8  amends for what I have done.
9    THE COURT:  Thank you, sir.
10    Mr. McAlister, do you wish to make a statement?
11    MR. McALISTER:  I do, Your Honor.
12    I did file a motion in this case.  I'd like for
13  the Court to consider the information that I placed in that
14  motion.
15    I'd also like the Court to note that at the
16  initiation of this investigation, I met with Mr. Schroeder
17  and his attorneys; and he stepped up to the plate
18  immediately.  There was no delay.  It was within the same
19  week.  And he never lied to me one time.  His cooperation
20  helped with the prosecutions in the United States and helped
21  with the prosecutions in Mexico.
22    It's very important for the Court to note, most
23  of the defendants in this case did step up and help me.
24  Absolutely none of the defendants, and especially Mr.
25  Schroeder, was responsible for the theft.  They didn't even

know the people responsible for the theft.  We had to work
our way backwards to get that information.  It was very
helpful on the Mexican side.  The part they played with the
sale on this side of the border was very far removed from any
of the incidents of theft.

The product being sold -- and I know this is
not a forgiveness -- but is not of the same quality as
somebody selling guns or drugs in the United States.
Certainly we would be jumping up and down and asking for
prison time in a case like that.

Also of significance in this case, to the best
of my examination of the records, this man didn't receive a
penny.  All the money that he took in went to his company,
and I can't tell that he made one penny off of any of these
transactions.  It all went to the company.

His stepping forward, the company then agreed
to pay restitution to Mexico.  So of the money that was taken
for this case has all been paid back, based on this
conspiracy that the United States put together.  And he has
also agreed to work with them on paying back the fine money
that the company had to pay.

I don't know what more a guy could do at that
point in time.  I have never really encountered a situation
where somebody stepped forward that quick and actually turned
around and made amends.

1          So I am asking from probation from the Court

2    based on my motion.

3          THE COURT:  All right.  Thank you, sir.

4          MR. McALISTER:  May I add one thing, Your Honor?

5          THE COURT:  Yes, sir.

6          MR. McALISTER:  I believe at a Level 10 in Zone B

7    the Court would go to 5C1.1, and that as a alternative to

8    confinement under the guidelines, the Court could offer home

9    confinement indeed in the guideline range.  So I would like

10   to amend my statement to ask for probation with home

11   confinement as a condition to satisfy any term of

12   imprisonment.

13         THE COURT:  All right.  Thank you, sir.

14         Well, would the government object if I made a

15   downward departure two levels more than you are recommending?

16         MR. McALISTER:  Absolutely not, Your Honor.  As a

17   matter of fact, we would agree with the Court on that.  As I

18   have indicated, he's done everything we have asked.

19         THE COURT:  All right.  I will state the sentence

20   the Court intends to impose.  I will give final opportunity

21   for any legal objections, if there are any, before it is

22   finally imposed.

23         I have considered the advisory guidelines; I

24   have also considered the Section 5K1.1 motion, the

25   submissions of the government's counsel and the defense

counsel. I find that the Section 5K1.1 motion is well
supported, and I'll therefore grant that motion and make a
downward departure from the guidelines and sentence within
the range of Offense Level 8, Criminal History Category 1.

Pursuant to the -- I will state the sentence I
am going to impose. As I say, I will give opportunity for
any legal objections, if there are any, before it is finally
imposed.

Pursuant to the Sentencing Reform Act of 1984,
it's the judgment of the Court that the defendant Donald
Schroeder is hereby placed on a term of probation for a
period of three years.

Special conditions while on probation. The
defendant shall not commit another federal, state or local
crime, comply with the standard conditions that have been
adopted by this Court under General Order No. H1996-10, abide
by any mandatory conditions required by law and shall comply
with following additional conditions:

The defendant shall not possess a firearm,
ammunition, destructive device or any other dangerous weapon.
The defendant shall cooperate in the collection of a DNA
sample from the defendant if collections of such sample is
authorized pursuant to Section 3 of the DNA Analysis Backlog
Elimination Act of 2000.

The defendant is required to provide the

probation officer access to any requested financial information. A fine or restitution amount has been imposed. The defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

It is further ordered that the defendant as additional -- it is further ordered that the defendant shall pay the United States a special assessment of $100. It's further ordered that the defendant shall pay the United States a fine in the amount of $10,000.

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows: The defendant shall make a lump sum payment of $100 due immediately. The remaining balance of criminal monetary penalties, the remaining $10,000 fine shall be paid within 30 days after the date of this judgment. Payment shall be made through the United States District Clerk, Southern District of Texas.

Is there any legal reason why the sentence should not be imposed as stated?

MR. McALISTER: No, Your Honor.

MR. WOODS: No, Your Honor.

THE COURT: Then pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the sentence as stated is imposed upon defendant Donald Schroeder.

1      Mr. Schroeder, you have a right to appeal this
2  matter.  If you cannot afford a lawyer to represent you on
3  appeal and can satisfy the Court that you meet the criteria
4  for the appointment of counsel, I will appoint a lawyer for
5  you.
6      Mr. Woods will advise you of your appeal
7  rights, I am sure; and I will give to you this written notice
8  of your appeal rights that you may take with you.  A copy of
9  that will be retained in the Court file.
10      Let me say that you have certainly had a lot of
11  splendid support from business colleagues, letters and so
12  forth over a long period of time.  Of course, you've had a
13  very outstanding counsel representing you during this period
14  of time.
15      I was satisfied to make a larger departure than
16  had been recommended at that point because I was persuaded
17  that probably home detention is not going to be really
18  required in your case.  I had that confidence in you from
19  everything I've heard and expecting your future to go just as
20  everyone has indicated and as you have told me it will.
21      Is there anything further in this matter?
22      MR. McALISTER:  No, Your Honor.
23      MR. WOODS:  No, Your Honor.
24      THE COURT:  Very well.  That concludes this hearing.
25  Thank you.

1          MR. WOODS:    Thank you, Your Honor.

2          THE DEFENDANT:    Thank you.

3

4

5                    (Conclusion of Sentencing)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

          I, Fred Warner, Official Court Reporter for the
United States District Court for the Southern District of
Texas, Houston Division, do hereby certify that the foregoing
pages 1 through 18 are a true and correct transcript of the
proceedings had in the above-styled and numbered cause before
the Honorable EWING WERLEIN, JR., United States District
Judge, on the 24th day of September, 2010.

          WITNESS MY OFFICIAL HAND at my office in Houston,
Harris County, Texas on this the 1st day of October, A.D.,
2010.

                              _____
                              Fred Warner, CSR
                              Official Court Reporter